IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| LINDA F. BREWER ) | |
| ) | |
| v. ) | No. 2:08-0039 |
| ) | Judge Wiseman/Bryant |
| SOCIAL SECURITY ADMINISTRATION ) | |

To:   The Honorable Thomas A. Wiseman, Jr., Senior Judge

### REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration"), through its Commissioner, denying plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), as provided under Titles II and XVI of the Social Security Act ("the Act"). The case is currently pending on plaintiff's motion for judgment on the pleadings (Docket Entry No. 14), to which defendant has responded (Docket Entry No. 17). Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 12), and for the reasons given below, the undersigned recommends that plaintiff's motion be **DENIED**, and that the decision of the SSA be **AFFIRMED**.

### I. Introduction

Plaintiff filed her DIB and SSI applications on June 2, 2004, alleging disability as of September 8, 2003 (Tr. 73, 122). These applications were denied at both the initial and

1

reconsideration stages of state agency review, following which plaintiff requested a *de novo* hearing by an Administrative Law Judge ("ALJ"). This hearing was held on January 31, 2007, when plaintiff appeared with counsel and gave testimony (Tr. 385-411). Testimony was also received from an impartial vocational expert. At the conclusion of the hearing, plaintiff's case was taken under advisement, pending the results of a final consultative examination to be scheduled. (Tr. 410) That final examination was completed in March 2007, and on August 7, 2007, the ALJ issued a written decision denying plaintiff's claims to benefits (Tr. 19-26). The ALJ's decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2008.

2. The claimant has not engaged in substantial gainful activity since September 8, 2003, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: lymphedema, hypertension, chronic obstructive pulmonary disease, left elbow mass, bilateral superficial lower extremity venous varicosities, gastroesophageal reflux, obesity, history of L5-S1 fusion, and vision impairment (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work except that she can only lift fifteen pounds occasionally rather than twenty. She is limited to jobs requiring gross vision only and not distant vision. She must avoid more than occasionally climbing ladders, ropes, scaffolds. She can frequently climb ramps and stairs, stoop, bend from the waist to the floor, crouch, and crawl. She can stand and/or walk up to four hours out of an eight-hour day if she is

provided an opportunity to sit when not standing or walking. She suffers from mild pain.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on August 4, 1963 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 8, 2003 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 21, 22, 25, 26)

On March 11, 2008, the SSA's Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 6-9), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. §§ 405(g), 1383(c). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

3

## II. Review of the Record

In reciting the factual background in support of her motion, plaintiff has managed to condense the 400-page record into roughly a page of text. See Docket Entry No. 15 at 2-3. While her synopsis perhaps underrepresents the record pertaining to the issues in this case, the undersigned is guided by plaintiff's candid acknowledgment that, "[w]hile [she] alleges disability as a result of a combination of severe impairments, it is evident from the record that her primary impairment is lumbar degenerative disc disease." Id. at 2. Inasmuch as plaintiff's fact summary contains only information related to this primary impairment, the following, slightly more robust summary will do so as well.

On July 25, 2002, plaintiff saw her treating internist, Dr. Ernest Buchanan, with complaints of hip and low back pain, as well as pain in the toes of her left foot (Tr. 296). Dr. Buchanan found lymphedema, or swelling due to lymph node disorder, of the left lower extremity, and prescribed pain medication. Id. Plaintiff did not return to Dr. Buchanan complaining of low back pain until November 19, 2002, when a two-week history of such pain was reported (Tr. 294). Dr. Buchanan prescribed the narcotic Lortab for the pain. Id.

In May of 2003, plaintiff was sent for an x-ray of her coccyx after having fallen and suffering pain in that area. This x-ray revealed "a spondylolisthesis of L5 on S1 which is a grade 1," but no sacral abnormality (Tr. 306).[1]

On August 8, 2003, plaintiff saw Dr. Buchanan with complaints of low back

---

[1]This finding describes the forward displacement of the fifth lumbar vertebra over the body of the sacrum. Dorland's Illustrated Medical Dictionary ("Dorland's") 1563 (28th ed. 1994). A "grade 1" spondylolisthesis represents the least significant degree of disc displacement, with about 25% of the disc slipping forward over the body beneath it.
http://www.spineuniverse.com/displayarticle.php/article114.html.

4

pain radiating down the left leg. Dr. Buchanan ordered an MRI of plaintiff's lumbar spine, and prescribed Lortab for the pain and Zanaflex for the lumbosacral muscle spasm he appreciated on examining plaintiff. (Tr. 290) The lumbar MRI revealed her grade 1 spondylolisthesis with some thinning of the disc space, borderline to moderate tightness of both neural foraminal openings as a result, and bilateral sponsylolysis defect[2] posteriorly. (Tr. 163, 290, 304) Dr. Buchanan referred plaintiff to neurosurgeon Robert S. Davis, M.D.

Dr. Davis examined plaintiff on August 21, 2003 (Tr. 176). He reported that plaintiff complained of mechanical lower back pain and left lower extremity pain for one year with no precipitating event, and that she was positive for numbness and tingling in the left lower extremity and subjective left lower extremity weakness. Id. He made no significant neurological findings, and indicated that while conservative treatment was appropriate, he wanted plaintiff to have further x-rays done. Id. He advised plaintiff to live with this condition for as long as possible before considering surgical treatment. Id.

On September 9, 2003, the day after plaintiff's alleged onset of disability, she underwent an interior BAK fusion at L5-S1, which entailed the placement of two metallic cages between the L5 vertebra and the sacrum, fused in place with harvested bone, in order to maintain the disc space in that region. (Tr. 186-87) Plaintiff's surgery was a success and her postoperative recovery was routine, though she did not experience complete resolution of her back or leg pain (Tr. 334). Dr. Davis instructed that plaintiff could resume activities as tolerated and return for annual x-rays in follow up. (Tr. 334)

On April 26, 2004, plaintiff presented to Dr. Buchanan complaining of burning

---

[2]Dissolution of the vertebra. Dorland's at 1563.

5

in her legs (Tr. 289). Examination was normal, and Dr. Buchanan ordered a nerve conduction study (id.), but if such study was in fact performed, its results are not included in the record. On June 24, 2004, plaintiff reported to Dr. Buchanan that her back and leg pain had returned, exactly as it was before her surgery. Dr. Buchanan advised her to stay off of work until she saw Dr. Davis again. (Tr. 287)

On August 27, 2004, an x-ray of the lumbar spine showed the BAK cages with one centimeter of anterior subluxation, or partial dislocation. (Tr. 338)

On December 2, 2004, plaintiff complained to Dr. Buchanan of some intermittent spasm in her mid-back. A small spasm was located in that area, and Dr. Buchanan prescribed Zanaflex. (Tr. 281)

On April 28, 2005, a nonexamining physician hired by the state agency reviewed plaintiff's medical records and opined that she could perform medium exertional work, including the performance of all postural maneuvers on a frequent basis except climbing, which she assessed as something plaintiff could do frequently when it came to ramps or stairs, but only occasionally when it came to ladders, ropes, or scaffolds. (Tr. 322-27)

On July 20, 2005, plaintiff complained to Dr. Buchanan of recurrent low back pain (Tr. 343). Dr. Buchanan noted bruising in the area, as well as muscle spasm. He ordered an MRI, which again revealed the L5 spondylolysis defect and the grade 1 spondylolisthesis, but no spinal canal stenosis, disc herniation, or neural foraminal narrowing (Tr. 343, 348).

On December 18, 2006, plaintiff complained to Dr. Buchanan of low back pain. Dr. Buchanan assessed low back pain and put plaintiff on a trial of the anti-

6

inflammatory Nabumetone. (Tr. 350) On that same date, Dr. Buchanan completed a treating source statement of plaintiff's physical capacities, in which he assessed the greatest degree of restriction available in every domain of the assessment form. (Tr. 351-52)

A consultative examiner, Dr. Jerry Lee Surber, examined plaintiff on two occasions, once in 2005 and once again at the ALJ's request following plaintiff's 2007 hearing. At the conclusion of both examinations, Dr. Surber opined that plaintiff could lift or carry up to fifteen pounds occasionally, could stand or walk for up to four out of eight hours with normal breaks, and could sit for at least six out of eight hours with normal breaks. (Tr. 320, 360) Following his 2007 examination, Dr. Surber also concluded that plaintiff could perform all postural activities on an occasional basis, with the exception of climbing ramps, stairs, ladders, ropes, or scaffolds, which she could never do. (Tr. 362)

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the evidence could also support a different conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached. Her v. Comm'r of Soc.

7

Sec., 203 F.3d 388, 389 (6th Cir. 1999).

## B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2) A claimant who does not have a severe impairment will not be found to be disabled.
>
> 3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.
>
> 4) A claimant who can perform work that he has done in the past will not be found to be disabled.
>
> 5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f),

8

416.920 (b)-(f).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

### C. Plaintiff's Statement of Errors

Plaintiff alleges only one defect in the ALJ's decision: that he erroneously discounted the January 2007 assessment of plaintiff's treating physician, Dr. Buchanan. Plaintiff also argues that "new and material evidence that was submitted and received by the

9

Appeals Council warrants a remand of this claim for further evaluation." (Docket Entry No. 15 at 3)[3]  For the reasons that follow, the undersigned finds no merit in either argument.

1. <u>Rejection of Dr. Buchanan's Assessment</u>

Citing the well established preference and procedural favor generally accorded the opinions of a Social Security claimant's treating physician,[4] plaintiff contends that the ALJ erred in discounting Dr. Buchanan's January 2007 assessment of her work-related physical capacities by failing to analyze its sufficiency under standard procedures prescribed by the regulations, choosing instead to dismiss it upon his own hypotheses, as follows:

> The possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality which should be mentioned is that patients can be quite

---

[3]The undersigned, in agreement with defendant, construes this second argument as an alternative request for remand under the sixth sentence of 42 U.S.C. § 405(g), though it was not explicitly framed as such. Given that the evidence submitted to the Appeals Council was not before the ALJ (whose decision became final under the statute once the Appeals Council declined review), such evidence cannot otherwise be considered here. <u>See</u>, <u>e.g.</u>, <u>Cooper v. Comm'r of Soc. Sec.</u>, 277 F.Supp.2d 748, 753-54 (E.D. Mich. 2003), and authorities cited therein.

[4]When a treating physician's opinion is sufficiently supported and not substantially opposed, it is entitled to controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Even when such opinions are not controlling, "in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference ..." <u>Rogers v. Comm'r of Soc. Sec.</u>, 486 F.3d 234, 242 (6th Cir. 2007). Sections 404.1527(d) and 416.927(d) of the SSA's regulations prescribe that, in weighing a treating source's opinion, the ALJ is to consider (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the opinion, (4) the consistency of the opinion with the record as a whole, and (5) the specialization of the treating source. These regulations further assure claimants that "[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Furthermore, "because § 1527(d)(2) provides claimants with an 'important procedural safeguard,' the SSA [is] not free to relax or disregard the rule in an ad hoc fashion." <u>Bowen v. Comm'r of Soc. Sec.</u>, 478 F.3d 742, 747 (6th Cir. 2007)(<u>quoting</u> <u>Wilson v. Comm'r of Soc. Sec.</u>, 378 F.3d 541, 547 (6th Cir. 2004)).

10

> insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patient's requests and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case.

(Tr. 23)

Few are the scenarios in which the requirement that "good reasons" be given to support the weight assigned a treating source, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), would be met by a paragraph in which the ALJ largely waxes philosophic, as here. However, in this case, considering the content of Dr. Buchanan's assessment, the last sentence of the foregoing paragraph, and the paragraph of the ALJ's decision which preceded it, the undersigned finds that the requirements of good reason giving and substantial evidence have been met.

Dr. Buchanan's assessment (Tr. 351-52) does indeed depart substantially from the rest of the evidence in the record. This checkbox assessment reflects the most dire limitations possible in every single field of physical function listed, without any further explanation or remark by Dr. Buchanan. It allows, in sum, that plaintiff is capable of sitting and standing/walking for less than one hour each out of an entire eight-hour workday, but that she cannot use her hands or feet for <u>any</u> repetitive action; can <u>never</u> lift or carry any amount of weight; can <u>never</u> engage in any postural activities (e.g., bending, squatting); and is <u>totally</u> restricted from any exposure to environmental hazards or irritants. <u>Id.</u> An individual so limited would essentially be bedridden, and plaintiff's own testimony and other statements about her activity level contradict this assumption (Tr. 107, 110, 396, 404, 405

11

(reflecting plaintiff's ability to fold laundry, wash dishes, drive when necessary, sweep the floor, cook occasionally, and lift 5 pounds)), not to mention her condition as reflected in Dr. Buchanan's treatment notes.  Plaintiff's level of daily activity was cited in support of the ALJ's residual functional capacity finding.  But perhaps more telling of the ALJ's view of Dr. Buchanan's opinion is the paragraph of his decision before he begins speculating about Dr. Buchanan's motives, where four sentences are devoted to underscoring the fact that only a treating source's <u>medical</u> opinions are entitled to deference, whereas opinions on the legal issue of disability and other such opinions are not (Tr. 23).  <u>See</u> also 20 C.F.R. §§ 404.1527(e), 416.927(e).  The implication -- that Dr. Buchanan's unsupported assessment is functionally equivalent to a bare conclusion that plaintiff is totally disabled -- is both obvious from a reading of this paragraph and, in the undersigned's view, entirely correct.

        Even if such an implied characterization of the treating physician's opinion is insufficient to factor into the "good reasons" analysis, leaving that opinion's departure from the rest of the record as the sole reason given for its weighting in this case, the undersigned would still not find reversible error.  As explained above, Dr. Buchanan's 2007 assessment stands very much alone on this record in terms of its representation that plaintiff is completely unable to function in the workplace.  This isolation from the rest of the record is either reason enough to reject the assessment,[5] or the factor which makes the absence of additional, explicit analysis that rare violation of § 404.1527(d)(2) which is *de minimis* and thus harmless.  <u>See</u> <u>Wilson v. Comm'r of Soc. Sec.</u>, 378 F.3d 541, 547 (6th Cir. 2004)(describing the possibility of harmless error if the treating source's opinion which is

---

[5]Consistency with the other record evidence is one of the factors which ALJs are to consider when weighing treating source opinion evidence.  20 C.F.R. §§ 404.1527(d), 416.927(d).

12

inadequately dealt with "is so patently deficient that the Commissioner could not possibly credit it").

## 2. Sentence Six Remand

Plaintiff alternatively argues, in effect, that a prejudgment remand should be ordered in this case pursuant to the sixth sentence of 42 U.S.C. § 405(g), so that the ALJ can consider new evidence of a second surgery for revision of plaintiff's spinal fusion. This evidence was submitted to the Appeals Council and is thus part of the record before the court (Tr. 369-84), though it was not of record at the time the ALJ issued his decision. The evidence in question shows that during this second surgery in December 2007, Dr. Davis, the neurosurgeon, visualized what had not previously been disclosed on imaging studies: "significant hypertrophy and ligamentous tissue in the region of the neuroforamen, compressing the exiting [] L5 nerve root." (Tr. 371)

A request for remand to consider evidence not previously before the ALJ invokes the sixth sentence of 42 U.S.C. § 405(g), pursuant to which the court may order such a return to the agency prior to entering judgment in the case, "but only upon a showing that there is new evidence which is material and that there is good cause for failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). The party seeking remand bears the burden of making this showing. Hollon v. Comm'r of Soc. Sec., 447 F.3d 477, 483 (6th Cir. 2006). The evidence in question here is clearly new, as it was not in existence at the time of plaintiff's hearing. See id. at 483-84 (quoting Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001)). "Such evidence, in turn, is deemed 'material' if 'there is a reasonable probability that the [Commissioner] would have reached a different disposition of

13

the disability claim if presented with the new evidence.'" Id.[6]

Defendant argues that this "reasonable probability" of a different decision in light of the new evidence does not exist in this case, and the undersigned is inclined to agree. Although nerve root compression is clearly expected to cause the kind of radicular symptoms which plaintiff has complained of in this case, it does not appear that plaintiff can meet her burden of demonstrating that this condition existed during the time prior to the ALJ's August 7, 2007 decision. In particular, although plaintiff had begun to display a left antalgic gait as early as March 2007 (Tr. 359),[7] she had testified at her January 2007 hearing that, despite an increase in back pain the last couple of weeks, she did not like to take pain medications due to the way they made her feel, and that her pain was tolerable as long as she did not get too active. (Tr. 398, 401) Moreover, it was specifically noted that plaintiff had returned to Dr. Davis on October 1, 2007, due to "a three week exacerbation of mechanical lower back pain and left lower extremity radicular pain with numbness and tingling." (Tr. 384) Even then, it was noted that although plaintiff had a left antalgic gait and left lower extremity pain, she was able to heel-toe walk and one-leg squat, and she was prescribed a six visit course of physical therapy, with instructions to continue anti-inflammatory medication, pursue her activities as tolerated, and return to care in one month. Id. While this consultation eventually led to a second surgery to revise the prior disc fusion after conservative measures

---

[6] Defendant does not argue that good cause for the requested remand is lacking, and the undersigned assumes *arguendo* that it exists.

[7] Plaintiff testified that it was unknown whether her limp was caused by her back impairment or the swelling associated with her lower extremity lymphedema (Tr. 398).

failed to adequately control her symptoms (Tr. 378-81), there is nothing to indicate that plaintiff's exacerbated radicular symptoms due to nerve root compromise had been present prior to the ALJ's decision in August 2007. Some such pain was of course present during the period and accounted for by the ALJ, who found the medical record consistent with complaints of mild pain[8] and specifically attributed plaintiff's light lifting limitations to her back impairment. (Tr. 23, 24) However, the new evidence does not support the existence, during the relevant period, of such pain as would ultimately justify further surgical intervention. Accordingly, it cannot be said that a reasonable probability exists that the ALJ's decision would change upon consideration of this new evidence. Lacking materiality, the evidence cited by plaintiff does not justify a sentence six remand.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the pleadings be **DENIED**, and that the decision of the SSA be **AFFIRMED**.

Any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have ten (10) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this

---

[8]It is perhaps noteworthy that, in response to the ALJ's questioning, the vocational expert testified that if plaintiff's pain were properly characterized as moderate rather than mild, the jobs she had identified would be reduced by only fifteen percent. (Tr. 409)

15

Recommendation.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Cowherd v. Million</u>, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

    **ENTERED** this 9th day of March, 2009.

                                                    s/ John S. Bryant
                                                    JOHN S. BRYANT
                                                    UNITED STATES MAGISTRATE JUDGE